# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THOMAS LENNART HELLSTROM,

        Petitioner,

v.                                       No. 2:10-CV-10772

MARY BERGHUIS,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan prisoner Thomas Lennart Hellstrom ("Petitioner"), through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of five counts of second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(a), following a jury trial in the Macomb County Circuit Court and was sentenced to concurrent terms of fifty-seven months to fifteen years imprisonment in 2006. In his pleadings, he raises claims concerning (1) the admission of other acts evidence; (2) limitations on direct and cross-examination and access to the victim's medical records; (3) prosecutorial misconduct; (4) the validity of a search and seizure of child pornography; and (5) the constitutionality of *Stone v. Powell*, 428 U.S. 465 (1976). For the reasons discussed below, the court will deny the petition and decline to issue a certificate of appealability.

## I.  BACKGROUND

Petitioner's convictions arise from his sexual impositions on a nine or ten year old girl at his home in Macomb County, Michigan in 2003.  The court adopts the statement of facts set forth by the Michigan Court of Appeals, which are presumed correct on habeas review.  *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).  Those facts are as follows:

> Defendant was arrested and charged with multiple counts of criminal sexual conduct on March 7, 2003.  Several days later, an amended search warrant led to the discovery of child pornographic material on the defendant's home computers.  Before trial, defendant moved to suppress the child-pornography evidence.  An evidentiary hearing was held on December 5, 2003, following which the trial court denied defendant's motion.  The trial court concluded that sufficient probable cause existed and that the warrant was not overly broad. Defendant filed an interlocutory appeal to this Court, which affirmed the trial court's decision on October 21, 2004, in *People v. Hellstrom*, 264 Mich App 187; 690 NW2d 293 (2004).  This Court found that the search was valid on the basis of the good-faith exception to the Fourth Amendment exclusionary rule, as set forth in *People v. Goldston*, 470 Mich 523; 682 NW2d 479 (2004).  Therefore, this Court affirmed the trial court's decision but for a different reason.
>
> On November 10, 2004, defendant moved for reconsideration, arguing that *Goldsto*n could not be applied retroactively and did not apply to the search warrants.  On December 10, 2004, this Court denied defendant's motion for reconsideration.  On January 18, 2005, defendant appealed to the Supreme Court, renewing the argument made in the interlocutory appeal and motion for reconsideration in this Court.  On September 15, 2005, the Supreme Court denied leave to appeal.  *People v. Hellstrom*, 474 Mich 862; 703 NW2d 189 (2005).
>
> On December 2, 2005, defendant filed a renewed motion to suppress in the trial court, relying on the recent decision in *United States v. Laughton*, 409 F3d 744 (CA 6, 2005).  Defendant also sought relief based on the fact that this Court never considered whether it was proper to apply the good-faith exception retroactively to this case and that *Goldston* should not be applied retroactively.  In a January 9, 2006 opinion and order, the trial court denied defendant's renewed motion to suppress.  The court ruled that *Laughton* did not require a different result and that it was unable

2

to consider whether this Court erroneously relied on *Goldston*.

On January 30, 2006, after a jury trial, defendant was acquitted of the three first-degree criminal sexual conduct charges, but convicted of the five counts of second-degree criminal sexual conduct. Defendant's convictions arise from sexually molesting a neighborhood girl when she was between 8 and 11 years old. The victim testified that defendant befriended her and invited her into his house where they would play games and engage in other playful activities. She testified that on several occasions while playing games, defendant would rub his private area against her private area or her back. These incidents occurred in the basement or defendant's son's bedroom, and sometimes while they were playing with defendant's dog.

At trial, the prosecution presented the testimony of the victim's friend JJ, who also lived in defendant's neighborhood. JJ testified that defendant sexually molested her on two occasions while she was at defendant's home. The first incident occurred in defendant's son's bedroom, when defendant rubbed his penis against JJ's tailbone while JJ was kneeling over the bed to look at an eel. The second incident occurred in the basement, when defendant grabbed JJ's waist and rubbed his penis on her after asking her to play a game that involved touching her toes. The prosecution also presented evidence that images of child pornography were found on computers in defendant's home.

On March 28, 2006, defendant was sentenced to concurrent prison terms of 57 months to 15 years for each second-degree criminal sexual conduct conviction.

*People v. Hellstrom*, No. 269980, 2007 WL 3170525, at *1-2 (Mich. Ct. App. Oct. 30, 2007).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims presented on habeas review. The court of appeals denied relief on those claims and affirmed his convictions. *Id.* Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Hellstrom*, 482 Mich. 1078, 758

3

N.W.2d 256 (2008).  The Michigan Supreme Court also denied reconsideration.  *People v. Hellstrom*, 483 Mich. 897, 760 N.W.2d 470 (2009).

Petitioner, through counsel, filed the instant federal habeas petition raising the following claims:

I.      He was denied a fair trial and due process by the admission of child pornography found in the temporary internet files on his home computers and by the admission JJ's testimony;

II.     He was denied his confrontation, fair trial, and due process rights by the trial court's limitation on the cross-examination of certain witnesses for bias and by the denial of access to the victim's medical records to impeach her mother's testimony;

III.    He was denied a fair trial and due process by the prosecutor's misconduct in using the victim's mother to bolstering the victim's testimony;

IV.     He was denied a full and fair opportunity to litigate a Fourth Amendment claim in the state courts; and

V.      *Stone v. Powell*, 428 U.S. 465 (1976), was wrongly decided.

Respondent has filed an answer to the petition contending that it should be denied for lack of merit.  Petitioner, through counsel, has filed a reply to that answer.

## II.  STANDARD

Federal law imposes the following standard of review for habeas cases challenging state court convictions:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

(2)     resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in
        the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [United States Supreme Court cases]'

or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [that] precedent.'"

*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*,

529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he

'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant

the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonably applies that principle to the facts of petitioner's case."  *Wiggins v.*

*Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535

U.S. at 694.  "[T]he state court's decision must have been more than incorrect or

erroneous.  "The state court's application must have been "'objectively unreasonable.'"

*Wiggins*, 539 U.S. at 520-21 (citation omitted); *see also Williams*, 529 U.S. at 409.  The

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'

and 'demands that state-court decisions be given the benefit of the doubt.'"  *Renico v.*

*Lett*, -- U.S. --, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333

n.7 (1997)); *see also Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court has held that "a state court's determination that a claim lacks

merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision."  *Harrington v. Richter*, -- U.S. --, 131 S. Ct. 770,

786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme

Court emphasized "that even a strong case for relief does not mean the state court's

contrary conclusion was unreasonable."  *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75

(2003)).  Pursuant to § 2254(d), "a habeas court must determine what arguments or

theories supported or . . . could have supported, the state court's decision; and then it

must ask whether it is possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.*

Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the

state court's rejection of his claim "was so lacking in justification that there was an error

well understood and comprehended in existing law beyond any possibility for fairminded

disagreement."  *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of

whether the state court's decision comports with clearly established federal law as

determined by the Supreme Court at the time the state court renders its decision.  *See*

*Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)

(noting that the Supreme Court "has held on numerous occasions that it is not 'an

unreasonable application of clearly established Federal law' for a state court to decline to

apply a specific legal rule that has not been squarely established by this Court" (quoting

*Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam))); *Lockyer v. Andrade*,

538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require a state court to give

reasons before its decision can be deemed to have been 'adjudicated on the merits.'"

*Harrington*, 131 S. Ct. at 785.  Furthermore, it "does not require citation of [Supreme

Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so

long as neither the reasoning nor the result of the state-court decision contradicts them."

*Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the

requirements of "clearly established law" are to be determined by Supreme Court

precedent, the decisions of lower federal courts may be useful in assessing the

reasonableness of the state court's ruling.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th

Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v.*

*Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Habeas review is "limited to the record that was before the state court."  *Cullen v.*

*Pinholster*, -- U.S. --, 131 S. Ct. 1388, 1398 (2011). A state court's factual

determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. §

2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing

evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III.  DISCUSSION

### A.  Evidentiary Claims

Petitioner first asserts that he is entitled to habeas relief because the state trial

court erred by admitting child pornography found on his home computers and by

admitting JJ's testimony.  The Michigan Court of Appeals denied relief on the claims,

finding that the evidence was properly admitted under Michigan Rule of Evidence

404(b) and that Petitioner's additional arguments went to the weight, rather than the

admissibility, of the evidence.  *Hellstrom*, 2007 WL 3170525 at *2-4.

The state court's denial of relief is neither contrary to Supreme Court precedent

nor an unreasonable application thereof.  Alleged trial court errors in the application of

state evidentiary law are generally not cognizable as grounds for federal habeas relief.

*See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Accordingly, to the extent that Petitioner asserts that the trial court erred in admitting evidence and testimony under the Michigan Rules of Evidence, he merely alleges violations of state law which do not entitle him to federal habeas relief. *See, e.g., Bey*, 500 F.3d at 519; *Wheeler v. Jones*, 59 F. App'x 23, 28 (6th Cir. 2003). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Additionally, as to the admission of prior acts, the Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).[1] Thus, "[t]here is no clearly established Supreme Court precedent which

---

[1]Although the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms, *Bugh*, 329 F.3d at 512.

8

holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.  Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1).  *Id.* at 513; *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003).  Petitioner has thus failed to state a claim upon which habeas relief may be granted as to this issue.

Even were Petitioner able to state a cognizable claim, he would nevertheless not be entitled to relief.  Petitioner has not shown that the admission of the other acts evidence rendered his trial fundamentally unfair.  The child pornography recovered from Petitioner's home computers and JJ's testimony were both relevant and admissible under state evidentiary law on the issues of motive and intent, as well as lack of accident or mistake.  Moreover, the trial court instructed the jury on the proper consideration of such evidence, including the threshold issue of whether the jury "believed" the evidence at all.  (Trial Tr. 163:6-64:18, Jan. 30, 2006, Dkt. # 6-16.)  Jurors are presumed to follow a trial court's instructions.  *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").  Petitioner has failed to establish that the admission of the evidence was erroneous or, more importantly, that it rendered his trial fundamentally unfair.  Habeas relief is not warranted on this claim.

**B.  Confrontation Claims**

Petitioner next contends that he is entitled to habeas relief because the trial court violated his confrontation rights by limiting defense counsel's direct examination of Petitioner's wife and cross-examination of the victim's father and by denying a defense request for the victim's medical records to impeach her mother's testimony.  The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him.  "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."  *Davis v. Alaska*, 415 U.S. 308, 315 (1973).  "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.  Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit the witness."  *Id.* at 314.  The right of cross-examination, however, is not absolute.  "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986); *see also Norris v. Schotten*, 146 F.3d 314, 329-30 (6th Cir. 1998).

As to the restrictions on Petitioner's trial counsel's direct and cross-examination

10

questions, the Michigan Court of Appeals ruled that the trial court acted within its

discretion.  The court explained:

> At trial, defense counsel asked defendant's wife whether there was a time
> when she needed a personal protection order.  The prosecutor raised a
> relevancy objection, which the trial court sustained.  Also, during defense
> counsel's questioning of the victim's father, the trial court refused to allow
> defense counsel to delve into the issue of Conlon's anger with defense
> counsel, or question Conlon about whether he had in fact chased a
> defense investigator away.  The court sustained the prosecutor's
> objections that the questions were irrelevant and beyond the scope of her
> examination.  Defendant argues that the excluded evidence was
> admissible because it was relevant to the issue of the victim's family's
> bias.  A witness's bias is always relevant, and a defendant is entitled to
> have the jury consider any fact that may have influenced the witness's
> testimony.  *McGhee, supra* at 637.  Bias refers to the relationship between
> a party and a witness that might lead the witness to slant his testimony in
> favor or against a party.  Bias may be induced by a witness's "like, dislike,
> or fear of a party, or by the witness'[s] self-interest."  *Layher, supra* at 763.
> In this case, it was reasonable for the trial court to conclude that the
> proffered testimony did not establish bias and was irrelevant.  Therefore,
> the court did not abuse its discretion by foreclosing the proffered
> cross-examination.

*Hellstrom*, 2007 WL 3170525 at *5.  The Michigan Court of Appeals' decision to sustain

such limits on witness examination is neither contrary to Supreme Court precedent nor

an unreasonable application thereof.  Even were it true that Petitioner's wife sought a

personal protection order against one or more members of the victim's family (which

order may or may not have been granted), it was simply not of any significance—i.e.,

not relevant—to supporting or diminishing the proof of the case at hand and did not

establish bias on the part of any particular prosecution witness.  Moreover, the

Confrontation Clause "does not guarantee a criminal defendant the right to impeach one

witness through the cross-examination of another witness, regardless of whether the

testimony would address credibility or bias."  *Jordan v. Warden, Lebanon Correctional

Inst.*, -- F.3d --, 2012 WL 997476, at *9 (6th Cir. Mar. 27, 2012) (citing *Farley v. Lafler*,

193 F. App'x 543, 547 (6th Cir. 2006)).  Nor was the court of appeals's decision in

support of limiting the scope of Petitioner's trial counsel's examination of the victim's

father contrary to or an unreasonable application of Supreme Court precedent.  The

record indicates that defense counsel sought to question the victim's father about his

anger toward defense counsel and about an incident in which he allegedly confronted a

defense investigator who was conducting neighborhood interviews and tore up his

business card.  (Trial Tr. 135:1-25, Jan. 26, 2006, Dkt. # 6-15.)  Such questions were

irrelevant to the charged crimes and did not establish bias against a party to the case.

Although cross-examination as to bias, motive, and prejudice is constitutionally

protected, cross-examination as to general credibility is not.  *See Boggs v. Collins*, 226

F.3d 728, 737 (6th Cir. 2000) (citing *Olden v. Kentucky*, 488 U.S. 227, 232 (1988)); *cf.*

*Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007) (noting that *Boggs* concerns a

rape-shield statute and is "better seen as a case about the court's broad discretion to

limit the scope of cross-examination to prevent undue harassment and the like").

Defense counsel had ample opportunity to question prosecution witnesses, including

the victim's family members, about potential bias, motive, and prejudice.

Petitioner has also not shown that the state court erred in denying his request for

the victim's medical records.  The Michigan Court of Appeals determined that Petitioner

had "failed to show that the [medical] records contained material information necessary

to his defense" and concluded that the trial court did not abuse its discretion in denying

his discovery request.  *Hellstrom*, 2007 WL 3170525 at *5.  Those records were

privileged and Petitioner did not establish that they contained information relevant to his

defense.  To the extent that Petitioner sought the records to challenge the general

12

credibility of the victim's mother (regarding her beliefs about the victim's ADHD symptoms), he was not constitutionally-entitled to those records. *See Boggs,* 226 F.3d at 737.  Defense counsel had the opportunity to question the victim's mother about the basis for her beliefs and was able to question the victim directly about matters relevant to the case.  Petitioner has not shown that he was denied his right to confront the witnesses against him or denied the opportunity to present a meaningful defense.

Even assuming that the trial court violated Petitioner's constitutional rights with respect to any or all of the disputed evidentiary rulings, such error was harmless.  For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit).  Confrontation errors, like other trial errors, are subject to harmless error analysis. *Delaware v. VanArsdall*, 475 U.S. 673, 684 (1986).  The record reveals that defense counsel had sufficient opportunity to question the prosecution witnesses, including the victim's parents, about their version of events and their possible biases, motives, and prejudices.  Moreover, given the facts of the case, the jury was well aware that the victim's parents believed the victim, were angry at Petitioner and accordingly biased against him.  It was amply clear that they wanted him to be convicted of the charged crimes.  The trial court's

evidentiary restrictions did not have a substantial and injurious effect or influence on the

jury's verdict.  Habeas relief is not warranted on these claims.

### C.  Prosecutorial Misconduct Claim

Petitioner argues that he is entitled to habeas relief because the prosecutor engaged in misconduct by asking the victim's mother if she believed the victim and by using the mother's testimony to bolster the victim's credibility.  The Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).

The Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights.  *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases).  First, the court must determine whether the challenged statements were indeed improper.  *Id.* at 452.  Upon a finding of impropriety, the court must decide whether the statements were flagrant.  *Id.* Flagrancy is determined by an examination of four factors: (1) whether the statements tended to mislead the jury or prejudice the accused; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally before a jury; and (4) the total strength of the evidence against the accused.  *Id.*; *see also Boyle v. Milton*, 201 F.3d 711, 716 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 540-50 (6th Cir. 1999)).  "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as

14

probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.

1997) (citations omitted).

> The Michigan Court of Appeals denied relief on this claim, explaining in part:

> It is improper for a witness to give an opinion about the credibility of other witnesses. *People v. Williams*, 153 Mich App 582, 590; 396 NW2d 805 (1986). Here, the victim's mother testified about her daughter's medication history, but this testimony did not involve any direct opinion on her daughter's credibility. Thus, the testimony did not constitute improper vouching and the prosecutor was entitled to comment on the evidence. *People v. Lee*, 212 Mich App 228, 255-256; 537 NW2d 233 (1995). Later, however, the witness testified that she believed her daughter was telling the truth. Although this testimony may have been improper, it was brief and isolated. Under the circumstances, it is not more probable than not that this error affected the outcome of the trial in light of the weight and strength of the properly admitted evidence. *People v. McLaughlin*, 258 Mich App 635, 650; 672 NW2d 860 (2003). Therefore, the error, if any, was harmless.

*Hellstrom*, 2007 WL 3170525 at *4. The Michigan Court of Appeals' decision is neither

contrary to nor an unreasonable application of Supreme Court precedent. The

prosecutor's questions about the victim's medication history were arguably relevant,

were not a direct comment on the victim's credibility, and were allowed by the trial court.

It is well-settled that a prosecutor's good-faith effort to admit evidence does not

constitute misconduct, particularly where, as here, the trial court admits the evidence.

*See Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008); *Sweet v. Delo*, 125 F.3d 1144,

1154 (8th Cir. 1997); *see also People v. Noble*, 238 Mich. App. 647, 660, 608 N.W.2d

123, 131 (1999). Consequently, the prosecutor did not commit misconduct by eliciting

and commenting on such testimony.

In contrast, the prosecutor's question asking whether the victim's mother

believed that her daughter, the alleged victim, "was telling the truth"—to which the

mother replied "yes, I do"—was nothing less than a direct comment on the victim's

15

credibility.  (Trial Tr. 21:10-13, Jan. 25, 2006, Dkt. # 6-14.)  Under virtually all circumstances, it is improper for an attorney to ask a witness to comment on the credibility of another witness.  Credibility is a matter for the jury.  *See, e.g., United States v. Dickens*, 438 F. App'x 364, 372 (6th Cir. 2011) (citing cases).  The prosecutor's question was inappropriate.  Compounding the impropriety was that the question was the last one asked, and as such was fairly clearly intended to "hang in the air" as a matter of some significance.  In the larger scheme of the trial, however, the prosecutor's conduct was not so flagrant as to deprive Petitioner of a fundamentally fair trial.  The question, while deliberate, was isolated.  Also, it was not overtly misleading nor was it substantially prejudicial.  To be sure, no one would be surprised to find that a juvenile victim's mother believed that her child was telling the truth about something as apparently traumatic as the events described in this case.  The defense attorney objected to the prosecutor's question and the mother's answer, arguing that one "can't rehabilitate a witness with someone's opinion . . . ."  (Trial Tr. 21:16-22:2, Jan. 25, 2006.)  Unfortunately, the court also declined to actually rule upon the objection at that time, and merely invited the defense attorney to proceed with cross examination.  And defense counsel did, with a targeted and concise dismissal of the objectionable exchange that had happened a few moments before.  (*Id.* at 22:9-24.)  His first question to the witness was: "Whether she's telling the truth of not, you certainly believed her, correct?"  (*Id.* at 22:9-10.)  The mother answered, "correct."  (*Id.* at 22:11.)  The sting of the prosecution's impropriety—its prejudicial effect—was, with that question and answer, largely removed.

Additionally, while the prosecutor later argued, from the evidence, that the victim was *worthy* of belief, the prosecutor did not improperly vouch for the victim's credibility or express his *personal* belief in guilt.  Petitioner has not shown that the improper conduct on the part of the prosecutor was so flagrant as to deny him of a fundamentally fair trial.  In other words, to the extent that an error occurred—and it did—it was harmless.  *See Brecht*, 507 U.S. at 637; *see also Fry*, 551 U.S. at 117-18; *Ruelas*, 580 F.3d at 411.

Given the trial testimony as a whole, including the victim's testimony, it cannot be said that the prosecutor's improper question to the victim's mother had a substantial and injurious effect or influence upon the jury's verdict.  Habeas relief is not warranted on this claim.

### D.  Search and Seizure Claim

Petitioner argues that he did not have a full and fair opportunity to litigate his claim challenging the search of his home computers and the seizure of child pornography, evidence which was subsequently used against him at trial.  Federal courts will not address a Fourth Amendment claim on habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes.  *See Stone v. Powell*, 428 U.S. at 494-95.  A court must perform two distinct inquiries when determining whether a petitioner may raise a Fourth Amendment claim in a habeas action.  First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a [F]ourth [A]mendment claim.  Second, the court must determine whether presentation of the claim was in fact frustrated because

17

of a failure of that mechanism." *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

"Michigan has a procedural mechanism which presents an adequate opportunity for a

criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F.

Supp. 2d 524, 527 (E.D. Mich. 2005). This procedural mechanism is a motion to

suppress, ordinarily filed before trial. *See People v. Ferguson*, 135 N.W.2d 357, 358-59

(1965) (describing the availability of a pre-trial motion to suppress); *see also People v.*

*Harris*, 291 N.W.2d 97, 99 (1980) (analyzing the legality of a warrantless search,

seizure, and arrest even though raised for the first time on appeal). Consequently,

Petitioner is entitled to relief on this issue only if he establishes that he was prevented

from litigating the Fourth Amendment issue by a failure of Michigan's procedural

mechanism.

Petitioner has made no such showing. The record reveals that he challenged the

propriety of the search by filing motions to suppress the evidence seized from his home

before trial and pursing interlocutory and direct appeals in the state courts on this issue.

The trial court denied his motions, the Michigan Court of Appeals denied relief on the

merits, and the Michigan Supreme Court denied leave to appeal. Consequently, it is

clear that the Michigan courts were cognizant of Petitioner's Fourth Amendment claim

and he received all the process he was due. Petitioner's claim challenging the validity

of the search of his home and the seizure of the child pornography evidence is thus not

cognizable on habeas review pursuant to *Stone v. Powell*. Habeas relief is not

warranted on this claim.

2:10-cv-10772-RHC-CEB   Doc # 7   Filed 04/24/12   Pg 19 of 20   Pg ID 1244

E. *Stone v. Powell* Validity Claim

Lastly, and relatedly, Petitioner challenges the legitimacy of *Stone v. Powell*. As
discussed above, the Supreme Court held in *Stone v. Powell* that where the state had
provided an opportunity for full and fair litigation of Fourth Amendment claims, the
Constitution does not require federal habeas corpus relief. The Court recognized that
any additional benefits from considering search and seizure claims of state prisoners
anew, on collateral review, would be small in relation to the costs. Petitioner argues
that *Stone v. Powell* was wrongly decided and should be abrogated. This court, of
course, lacks the authority to overturn Supreme Court precedent. Habeas relief may be
made available only when a prisoner is incarcerated pursuant to a judgment which is
contrary to, or an unreasonable application of, federal constitutional law as determined
by the Supreme Court, or which is based upon an unreasonable determination of the
facts. Relief cannot be won by convincing the reviewing court that the applicable
Supreme Court precedent should be overturned. Petitioner is not entitled to relief on an
argument that *Stone v. Powell* was wrongly decided. *See Munson v. Kapture*, No. 01-
CV-71956-DT, 2003 WL 1867918, at *6 n.1 (E.D. Mich. Mar. 26, 2003) (denying relief
on similar claim).

## IV. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, a certificate of appealability must
issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of
appealability may issue "only if the applicant has made a substantial showing of the
denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on
the merits, the substantial showing threshold is met if the petitioner demonstrates that

19

reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the court must limit its examination to a threshold inquiry into the underlying merit of the claims.  *Id.* at 336-37. Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional rights as to his habeas claims.

## V.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Petitioner's petition for a writ of habeas corpus is DENIED and DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.


 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 24, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 24, 2012, by electronic and/or ordinary mail.

 s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\10-10772.HELLSTROM.Deny.2254.ctb.4.wpd